<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY FRANKLIN, et al., | : | |
| Plaintiffs, | : | Civil Action No. |
|  | : | 22-1718 (JMV) (AME) |
| v. | : | |
|  | : | **OPINION** |
| MIDDLESEX WATER COMPANY, et al., | : | |
| Defendants. | : | |

**VAZQUEZ, District Judge:**

Plaintiffs, who are state prisoners, are proceeding *pro se* with a civil rights Complaint pursuant to 42 U.S.C. § 1983. For the reasons stated in this Opinion, the Court will dismiss with prejudice Plaintiffs' claims for monetary damages against the state Defendants, in their official capacities, for lack of subject matter jurisdiction; dismiss without prejudice the remainder of Plaintiffs' federal claims for failure to state a claim; and decline to exercise supplemental jurisdiction over their state law claims. Additionally, the Court will deny Plaintiffs' motion to certify class action and deny their motion for a temporary restraining order and a preliminary injunction as moot.

**I.  BACKGROUND**[1]

This case arises from Plaintiffs' incarceration at East Jersey State Prison ("EJSP") in Rahway, New Jersey. Plaintiffs name the following parties as Defendants in this matter: (1) the

---

[1] The Court will accept as true the well-pleaded factual allegations in the Complaint for the purposes of this Opinion only. The Court has made no findings as to the actual veracity of Plaintiffs' allegations.

Middlesex Water Company; (2) Acting Commissioner Victoria L. Kuhn; (3) Administrator Robert Chetirkin; (4) Associate Administrator Cindy Sweeney; (5) Superintendent James Russo; (6) John Does 1–10; and (7) Jane Does 1–10.

According to Plaintiffs, the Middlesex Water Company allowed Perfluorooctanoic Acid ("PFOA") to enter into its water system which also serves EJSP. (D.E. 1, ¶¶ 9–14.) The Complaint alleges that PFOA "is a member of the group of chemicals called per-and polyfluoroalkyl substances (PFAS), used as a processing aid in the manufacture of fluoro[polymers] used in non-stick cookware and other products, as well as other commercial and industrial uses, based on its resistance to harsh chemicals and high temperatures." (*Id*. ¶ 25.) PFOA has also "been used in aqueous film-forming foams for firefighting and training, and it is found in consumer products such as stain-resistant coating for upholstery and carpets, water include[s] discharge from industrial facilities where it was made or used and the release of aqueous film-forming." (*Id*. ¶ 26.) As PFOA is extremely persistent in the environment and soluble in water, "contamination is expected to continue indefinitely." (*Id*.) People who drink water containing PFOA "in excess of the [maximum contaminant level] over time could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system," and "may also increase the risk of testicular and kidney cancer." (*Id*. ¶ 27.)

Plaintiffs allege that the State of New Jersey has set the current maximum contaminant level for PFOA to 14 parts per trillion, but on September 7, 2021, the Middlesex Water Company received notice that the August 2, 2021, water sample exceeded the maximum contaminant level at 36.1 parts per trillion. (*Id*. ¶¶ 28, 31.) Plaintiffs have been consistently drinking the tap water since their incarceration: Plaintiff Franklin has been incarcerated at EJSP since March of 2014, and Plaintiff Folkes has been incarcerated since June of 2019. (*Id*. ¶ 29–30.) The Middlesex Water

2

Company failed to notify the inmates that the PFOA levels in the water system were above the maximum contaminant level. (*Id*. ¶ 32.) As a result of drinking the contaminated water, Plaintiffs contend that they were diagnosed with H-Pylori, which appears to be a type of gastrointestinal bacterial infection. (*Id*.) Due to their infections, Plaintiffs each lost forty pounds and required Amoxicillin, Clarithromycin, and Proton Pump Inhibitors to treat their infections. (*Id*.)

The Complaint contains few factual allegations specific to any of the individual Defendants. Instead, the Complaint generally alleges that the individual Defendants knew or should have known of the PFOA issue, and that they failed to warn the inmates or address the issue, under different standards of culpability. (*Id*. ¶¶ 40–62.)

In March of 2022, Plaintiffs filed the instant Complaint, but Plaintiffs did not apply to proceed *in forma pauperis* until July of 2022. (D.E. 1; D.E. 5–7.) In their Complaint, Plaintiffs allege that Defendants have violated an unspecified constitutional right and raise various state law claims regarding the contaminated water at the prison. Plaintiffs also seek to proceed as a class action. In terms of relief, Plaintiffs appear to request, among other things, damages in the amount of $25,000.00 per day that they were exposed to the contaminated water, as well as injunctive relief to address the water issue.

## II. STANDARD OF REVIEW

District courts must review complaints in civil actions in which a prisoner files suit against "a governmental entity or officer or employee of a governmental entity," and in actions where the plaintiff is proceeding *in forma pauperis*. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a). District courts must *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b), 1915(e)(2). When considering a dismissal for failure to state a

claim on which relief can be granted, courts apply the same standard of review as that for dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012).

Consequently, to survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

### III. DISCUSSION

Plaintiffs bring this action pursuant to 42 U.S.C. § 1983. To succeed on a § 1983 claim, a plaintiff must allege a violation of a Constitutional right and that a "person" acting under color of state law committed the violation. *West v. Atkins*, 487 U.S. 42, 48 (1988). Plaintiffs do not specify which right under the Constitution is at issue, but the Court will construe the Complaint as raising conditions of confinement claims under the Eighth Amendment.

#### A. Immunity Under the Eleventh Amendment

As a preliminary matter, Plaintiffs assert claims for monetary relief against the state Defendants, in their official capacities, as employees of the New Jersey Department of Corrections ("NJDOC"). (D.E. 1, at 1.) To be liable within the meaning of § 1983, a defendant must be a "person." The Supreme Court held in *Will v. Michigan Dep't. of State Police*, 491 U.S. 58 (1989),

that a State or an official thereof acting in his or her official capacity is not a "person" within the meaning of § 1983, as they are immune from suit under the Eleventh Amendment.

Under the Eleventh Amendment, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  This immunity is available to all States, as well as any entity that is "an arm of the state." *See Mt. Healthy City Bd. of Educ. v. Boyle*, 429 U.S. 274, 280 (1977).  Such immunity renders "states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court." *E.g.*, *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002).  Further, the "Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693, n. 2 (3d Cir. 1996).

New Jersey state agencies "established in the Executive Branch of State Government" are entitled to Eleventh Amendment sovereign immunity "regardless of the relief sought" unless an exception to the rule applies. *See Rhett v. Evans*, 576 F. App'x 85, 88 (3d Cir. 2014) (internal quotation marks omitted).  Those exceptions apply when (1) Congress abrogates the immunity; (2) a state waives immunity; or (3) when a plaintiff sues individual state officers for prospective relief to end an ongoing violation of federal law. *See MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 503 (3d Cir. 2001).  Courts have consistently held that the NJDOC and its subsidiaries are entitled to Eleventh Amendment immunity. *See, e.g.*, *Wilson v. Haas*, No. 11-7001, 2012 WL 6761819, at *5 (D.N.J. Dec. 28, 2012); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538–39 (D.N.J. 1989).

Here, the individual Defendants are agents or employees of the NJDOC, and Plaintiffs have sued them in their official capacities. (ECF No. 1, at 1.) Consequently, in their official capacities, the state Defendants are entitled to sovereign immunity from Plaintiffs' claims for monetary damages, and the Court will dismiss those claims with prejudice for lack of subject matter jurisdiction. *Kaul v. Christie*, 372 F. Supp. 3d 206, 243 (D.N.J. 2019).

### B. Remaining Federal Claims

As to the conditions of confinement claims under the Eighth Amendment, the Constitution prohibits deprivations which deny "the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citations omitted) (internal quotation marks omitted); *Rhodes v. Chapman*, 452 U.S 337, 346–49 (1981); *see also Watson v. Secretary Penn. Dep't of Corr.*, 567 F. App'x 75, 79 (3d Cir. 2014). To state a sufficient claim, a plaintiff must plead both an objective component, that the conditions denied him the minimal measures of life's necessities, and a subjective component, that the defendants acted with deliberate indifference to those conditions. *Wilson*, 501 U.S. at 298–303; *Farmer*, 511 U.S. at 835; *Watson*, 567 F. App'x at 79.

A plaintiff may satisfy the objective component if he can show that the conditions alleged deprived him of "the minimal civilized measure of life's necessities," such as essential food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes*, 452 U.S. at 347–48; *Young v. Quinlan*, 960 F. 2d 351, 364 (3d Cir. 1992). In an exposure type case, where the harm is not immediate, the objective component requires a prisoner to demonstrate that he was personally exposed to "unreasonably high levels" of the contaminant in question. *Helling v. McKinney*, 509 U.S. 25, 36 (1993). As the Supreme Court explained, this inquiry "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury

6

. . . will actually be caused by exposure" to the particular contaminant. *Id*. at 36. "It also requires a court to assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk." *Id*. (emphasis in original). "In other words, the prisoner must show that the risk . . . is not one that today's society chooses to tolerate." *Id*. (addressing a case where Plaintiff complained of exposure to cigarette smoke); *Brown v. Williams*, 399 F. Supp. 2d 558, 565–66 (D. Del. 2005) (addressing a case involving a prison's contaminated water).

As to the subjective component, a plaintiff must show that "the official has acted with 'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 826. Stated differently, a prison official cannot be found liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw th[at] inference." *Id.* at 837.

Here, the Complaint fails to meet the subjective component as to Defendants Chetirkin and Kuhn because it fails to adequately detail how they became aware of the contaminated water issue. The Complaint simply repeats that these Defendants "knew or should have known" that PFOA was in the water system and that it posed a serious risk to inmates.[2] (D.E. 1, ¶¶ 41, 45, 47.) These allegations are bare conclusions which are insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678.

More critically, however, Plaintiffs fail to allege facts to satisfy the objective component. First, the Complaint fails to allege that Plaintiffs were exposed to "*unreasonably* high levels" of

---

[2] In contrast, the Complaint alleges that Defendants Sweeney and Russo became aware of the issue by responding to the Plaintiffs' administrative grievances. (D.E. 1, ¶¶ 12–13.)

PFOA, for the purposes of the Eighth Amendment. *Helling*, 509 U.S. at 36 (emphasis added). Plaintiffs allege that the PFOA in the water caused their H-Pylori bacterial infections, but none of the information in the Complaint suggests that PFOA causes or contributes to such infections. (D.E. 1, ¶¶ 29–30.)  The Complaint's only potential connection are the allegations that "[p]eople who drink water in excess of the [minimum contaminant level] over time could experience problems with their . . . immune system." (*Id*. ¶ 27.)  The Court finds that these allegations, without more, are too tenuous to draw the inference that PFOA caused Plaintiffs' bacterial infections.

Further, the Complaint fails to allege, with sufficient detail, how likely any future injury will occur due to exposure to PFOA at the levels present in the prison's water.  The Complaint uses equivocal language stating that people "*could* experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or . . . [the] reproductive system," and "*may* also increase the risk of testicular and kidney cancer," without elaborating on the probability of these risks.  (*Id*. (emphasis added).)  Without more, this Court is unable to engage in a "scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury" will actually result from exposure to PFOA.  *Helling*, 509 U.S. at 36.  As the Seventh Circuit explained, "failing to provide a maximally safe environment, one completely free from pollution or safety hazards, is not" cruel and unusual punishment. *Carroll v. DeTella*, 255 F.3d 470, 472–73 (7th Cir. 2001) (addressing a case which involved lead and radium contamination in the prison's water).  As the court reasoned, "many Americans live under conditions of exposure to various contaminants." *Id*. at 472; *Brown*, 399 F. Supp. 2d at 566.  Without more information, this Court cannot infer that "society considers" this level PFOA water contamination "to be so grave that it violates contemporary standards of decency." *Helling*, 509 U.S. at 36.

8

Indeed, the Complaint appears to allege that the Middlesex Water Company provides the same water to the public at large and does not allege that the public refuses to drink the water. (D.E. 1, ¶ 24, 31.)  "The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans." *Carroll*, 255 F.3d at 472; *Brown*, 399 F. Supp. 2d at 566.  If the free residents of Middlesex County generally drink the same water without issue, it would be difficult to find that providing it to prisoners "violates contemporary standards of decency." *Helling*, 509 U.S. at 36.

For all of those reasons, the Court finds that the Complaint fails to allege plausibly a conditions of confinement claim under the Eighth Amendment.  Accordingly, the Court will dismiss without prejudice the remainder of Plaintiffs' § 1983 claims.  As no federal claims remain in this case, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

**C.  Motion to Certify Class Action**

Finally, Plaintiffs have moved to certify class and proceed in this matter as a class action. (D.E. 8.)  Under Federal Rule of Civil Procedure 23(a)(4), plaintiffs can only maintain a class action if the class representative "will fairly and adequately protect the interests of the class." *Hennessey v. Atl. Cty. Dep't of Pub. Safety*, No. 06-143, 2006 WL 2711510, at *4 (D.N.J. Sept. 18, 2006).  "When confronting a request for class certification from a *pro se* litigant, however, courts have found that *pro se* plaintiffs generally cannot represent and protect the interests of the class fairly and adequately." *Id*. (citing *Cahn v. U.S.*, 269 F. Supp. 2d 537, 547 (D.N.J. 2003)).

Here, Plaintiffs are *pro se* prisoners without formal training in the law.  Nor have Plaintiffs shown that they have the wherewithal to maintain such an action.  Finally, these concerns are exacerbated because Plaintiffs are incarcerated and have not shown that they can oversee a class

9

action while confined. Thus, Plaintiffs would not be able to represent the interests of the class and maintain this suit as a class action. *Id.* (citing *Krebs v. Rutgers*, 797 F. Supp. 1246, 1261 (D.N.J. 1992) (denying class certification to pro se plaintiffs without sufficient legal education)). Accordingly, the Court will deny Plaintiffs' motion to certify class action.

## IV. CONCLUSION

For the reasons set forth above, the Court will dismiss with prejudice Plaintiffs' claims against the state Defendants for monetary damages in their official capacities, for lack of subject matter jurisdiction, dismiss without prejudice the remainder of Plaintiffs' federal claims, for failure to state a claim, and decline to exercise supplemental jurisdiction over their state law claims. Additionally, the Court will deny Plaintiffs' motion to certify class action. Finally, the Court will deny as moot Plaintiffs' motion for a preliminary injunction and for a temporary restraining order. (ECF No. 12.) If Plaintiffs believe that they can cure the deficiencies discussed above, they shall have forty-five days to file an amended complaint. If they file an amended complaint, Plaintiffs may renew their motion for a preliminary injunction and for a temporary restraining order. An appropriate Order follows.

Dated: 10/21/2022

JOHN MICHAEL VAZQUEZ
United States District Judge