NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ANTHONY FRANKLIN, et al., | : | |
| Plaintiffs, | : : | |
| | : | Civ. No. 22-1718 |
| v. | : : | |
| MIDDLESEX WATER COMPANY, et al., | : | OPINION |
| Defendants. | : : : | |

**CECCHI, District Judge.**

**I.   INTRODUCTION**

Plaintiffs Anthony Franklin and Tahref Folkes,[1] former inmates at East Jersey State Prison ("EJSP") in Rahway, New Jersey, filed this lawsuit alleging that they were harmed by drinking contaminated water while incarcerated at EJSP. Their amended complaint,[2] which the Court has construed as arising under 42 U.S.C. § 1983, asserts Eighth Amendment violations and state law claims against the following defendants: the Middlesex Water Company ("Middlesex Water"), EJSP Administrator Robert Chetirkin, EJSP Associate Administrator Cindy Sweeney,[3] EJSP Superintendent James Russo, and John and Jane Does 1–10. ECF No. 49.[4]

Before the Court are the motions of Chetirkin and Russo (the "Individual Defendants") and Middlesex Water (collectively, the "Moving Defendants") to dismiss the amended complaint.

---

[1] The Court recently received a letter from another individual, Joseph Aruanno, seeking to join this matter as a class member. ECF No. 65. The Court, however, already denied Plaintiffs' motion for class certification. ECF Nos. 13–14. Thus, as there is no class to join, Aruanno's request is denied.

[2] The amended complaint, which was docketed as ECF No. 16, is missing a page. Plaintiff was directed to file a complete version of the document (*see* ECF No. 34), which was docketed as ECF No. 49.

[3] Sweeney has not been served. ECF No. 26.

[4] Plaintiffs have not identified the John and Jane Does.

ECF Nos. 48, 51. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons that follow, the motions are granted as to the § 1983 claims against the Moving Defendants, and those claims are dismissed without prejudice. The Court will also dismiss the § 1983 claims without prejudice as against nonmoving defendants Sweeney and the John and Jane Does, and decline to exercise supplemental jurisdiction over the state law claims. Accordingly, the amended complaint will be dismissed without prejudice.

## II.   BACKGROUND

### A.   The Amended Complaint

For purposes of this decision, the Court accepts the following well-pleaded factual allegations as true.

#### 1.   The Middlesex Water Public Notice

Plaintiffs were inmates at EJSP during the relevant time. ECF No. 49 ¶¶ 3–4. Middlesex Water supplies water to residents of Middlesex County, where EJSP is located. *Id.* ¶ 13. "[A]t [Middlesex Water's] Park Avenue facility, groundwater was pumped from wellfields, collected and treated, and became part of the drinking water supply that [Middlesex Water] provided to its customers, including Plaintiffs." ECF No. 61 at 4.

On November 8, 2021, Middlesex Water issued a public notice titled "Important Information About Your Drinking Water." ECF No. 49 at 26, ¶ 14. The notice (the "November Notice") advised that Middlesex Water's system "recently violated a New Jersey drinking water standard" by exceeding a standard for perfluorooctanoic acid ("PFOA"). *Id.* at 26, ¶¶ 15–16. The November Notice explained:

> We routinely monitor for the presence of federal and state regulated drinking water contaminants. New Jersey adopted a standard, or maximum contaminant level (MCL), for PFOA in 2020 and required monitoring began in 2021. The MCL for PFOA is 14 parts per trillion (ppt) and is based on a running annual average (RAA),

> in which the four most recent quarters of monitoring data are averaged. On September 7, 2021, we received notice that the sample collected on August 2, 2021, showed that our system exceeds the PFOA MCL. PFOA was detected at 36.1 ppt, which caused the RAA to exceed the MCL regardless of the following quarterly results.

*Id*. at 26. The November Notice described PFOA, its uses, and the sources of PFOA found in drinking water as follows:

> [PFOA] is a member of the group of chemicals called per- and polyfluoroalkyl substances (PFAS), used as a processing aid in the manufacture of fluoropolymers used in non-stick cookware and other products, as well as other commercial and industrial uses, based on its resistance to harsh chemicals and high temperatures. PFOA has also been used in aqueous film-forming foams for firefighting and training, and it is found in consumer products such as stain-resistant coatings for upholstery and carpets, water-resistant outdoor clothing, and greaseproof food packaging. Major sources of PFOA in drinking water include discharge from industrial facilities where it was made or used and the release of aqueous film-forming foam. Although the use of PFOA has decreased substantially, contamination is expected to continue indefinitely because it is extremely persistent in the environment and is soluble and mobile in water.

*Id.* The November Notice also advised that drinking water containing PFOA in excess of the maximum contaminant level over time could lead to problems with "blood serum cholesterol levels, liver, kidney, immune system, or, in males, the reproductive system," and "may also increase the risk of testicular and kidney cancer." *Id*.

Under the heading, "What should I do?" the November Notice stated: "If you have specific health concerns, a severely compromised immune system, have an infant, are pregnant, or are elderly, you may be at higher risk than other individuals and should seek advice from your health care providers about drinking this water." *Id.* Under the heading, "What is being done?" the November Notice provides that Middlesex Water has been "monitoring the levels of PFAS compounds for a number of years"; has been "reporting on PFOA detection in [its] Annual Consumer Confidence Report sent to you since 2008"; and has under construction a "new treatment plant . . . expected to be in service in mid-2023." *Id.* at 27.

2. **Plaintiffs' Grievances**

Despite the November Notice being issued in November 2021, Plaintiffs allege that they "were not made aware that their drinking water was contaminated by [PFOA] until December 2021, and that was only through word of mouth." *Id.* ¶ 26. On December 13, 2021, Franklin filed an inmate grievance stating:

> I recently received an article from the newspaper stating that the water in Middlesex County, including "all of Rahway" is contaminated with [PFOA]. Is this true? If so, then how come no-one is advising the in[ma]te population that the water is unsafe and not to drink the water here at [EJSP]? And why isn't the inmate population being provided with bottle[s] "free of charge" to drink as a precaution?

*Id.* at 29. Approximately three hours later, Russo replied, "The water has not been deemed unsafe to drink. A notice from Middlesex Water has been posted in the Law Library." *Id.* Franklin appealed on December 15, 2021, arguing that "[a]ccording to the notice posted in the Law Library . . . , the water is unsafe for human consum[p]tion." *Id.* He again requested that the prison population be provided with bottled water and asserted that the notice in the law library was not adequate notice for the prison population. *Id.* Chetirkin replied, "You were provided with an appropriate response. The matter is closed." *Id.*

On December 20, 2021, Folkes filed a grievance that "presented the facts relating to this complaint." *Id.* ¶ 29. On December 28, 2021, Sweeney replied, "Notice from Middlesex Water was received and posted in the Library[;] there are no further updates." *Id.* Folkes appealed and on January 4, 2022, he received a response stating (1) he had been provided with an appropriate response and (2) the matter was closed. *Id.* On December 24, 2021, Franklin filed a grievance related to a 12-hour interruption in water service that day, stating, in relevant part, "There is a recurring issue with the water here at [EJSP] and I would like to know why aren't any notices being posted to inform the inmate population . . . if the water here [is] safe to use for its intended purposes." *Id.* at 31. Sweeney responded that there was a water main break requiring immediate

action.  *Id*.  Franklin appealed, requesting, "that the inmate population is notified via the Prison Communication Network (PCN) and/or memo that there is a[n] issue with the water.  Whether water main break or other contaminations in the water."  *Id*.  Chetirkin responded, "You were provided with an appropriate response.  The matter is closed."  *Id*.

Plaintiffs allege that Chetirkin, Sweeney, and Russo "have long known that the water supply provided to the plaintiffs was toxic and unsafe to drink," and "[t]hey have never notified plaintiffs of the water test results or the related health threat."  *Id.* ¶ 30.  Plaintiffs further assert that Middlesex Water knew that water contaminated with PFOA "would be used by Plaintiffs" and "[f]rom September 7, 2021, until the present day, the plaintiffs drank water at [EJSP] containing [PFOA] without receiving any notice that their water contained [PFOA]."  *Id.* ¶ 33.  Plaintiffs contend they are now "at risk to have high levels of [PFOA] in their blood"; "at risk for serious physical injuries and diseases"; "will be required to [ ] take medication for and will have to employ physicians and other medical personnel, and incur[] expenses."  *Id.* ¶ 36.  Plaintiffs further allege that "the water caused [PFOA] to enter into Plaintiff[s'] blood serum, resulting in high cholesterol and high blood pressure levels" and Plaintiffs "have suffered mental distress and anguish due to the use of the contaminated water."  *Id.* ¶ 55.  Franklin also asserts that he "had to purchase bottle[d] water from the inmate Commissary at his own expense."  *Id.* ¶ 37.

**B.  Procedural History**

Plaintiffs initiated this action in March 2022, when they were inmates at EJSP.  ECF No. 1.[5]  In October 2022, the Court (Hon. John Michael Vazquez, U.S.D.J., presiding) dismissed the

---

[5] On September 21, 2022, Folkes was transferred to Southwoods State Prison (ECF No. 15); in May 2023, he was transferred to a treatment center in Newark, New Jersey (ECF No. 23); and in July 2023, he was released from prison and moved to his current address of record (ECF No. 44).  In January 2023, Franklin was transferred to Bayside State Prison (ECF No. 18); and in July 2023, September 2023, and January 2024, he was transferred to different treatment facilities, with his February 2024 letter to the Court containing his current address of record (ECF Nos. 38, 56, 66).

5

complaint with prejudice as to the claims against the state defendants in their official capacities, dismissed the remaining federal claims against the state defendants without prejudice for failure to state a claim, declined to exercise supplemental jurisdiction over the state law claims against Middlesex Water, and denied Plaintiffs' motions for class certification and for a temporary restraining order and preliminary injunction. ECF Nos. 13–14.

Plaintiffs filed the amended complaint in November 2022 (ECF No. 16), asserting claims for (1) negligence (ECF No. 49[6] ¶¶ 31–41), (2) willful and wanton misconduct (*id.* ¶¶ 42–44), (3) strict liability in tort (*id.* ¶¶ 45–50), (4) misrepresentation (*id.* ¶¶ 51–52), (5) failure to warn (*id.* ¶¶ 53–55), and (6) violation of New Jersey's Safe Drinking Water Act (*id.* ¶¶ 56–59). Plaintiffs seek declaratory and injunctive relief and compensatory and punitive damages. *Id.* ¶¶ 64–70. The case was reassigned to the undersigned in September 2023. ECF No. 52.

In August 2023, the Individual Defendants moved to dismiss the amended complaint, arguing (1) "Plaintiffs have not plead[ed] facts suggesting the Defendants had a legal duty to warn them about problems with water" (ECF No. 48-1 at 6–8); (2) "Plaintiffs' Eighth Amendment Claims must be dismissed because the issue at the heart of Plaintiffs' Complaint, drinking water, is not for the purpose of punishment" (*id.* at 9–12); (3) "the Safe Drinking Water Act does not provide a private cause of action" (*id.* at 13–14); and (4) Plaintiffs' strict liability, misrepresentation, and failure-to-warn claims are barred by the New Jersey Tort Claims Act (*id.* at 14–16). Plaintiffs have not opposed or otherwise responded to this motion.[7]

---

[6] The Court will cite to ECF No. 49, the version of the amended complaint with all pages included.

[7] In November 2023, counsel for the Individual Defendants advised the Court that the copies of the motion to dismiss he served on Plaintiffs were returned to his office, and that he re-served the motion on Plaintiffs at their addresses on file. ECF No. 62.

In September 2023, Middlesex Water also moved to dismiss the amended complaint, arguing (1) lack of subject matter jurisdiction (ECF No. 51-1 at 5–6); (2) Plaintiffs' negligence claim is "predicate[d] . . . on an alleged violation of the Eighth Amendment" and Plaintiffs have not sufficiently pleaded an Eighth Amendment violation (*id.* at 6–9); (3) "Plaintiffs cannot establish any duty to warn based on the Safe Drinking Water Act" and the Safe Drinking Water Act does not contain a private right of action (*id.* at 9–11); and (4) Plaintiffs' claims for willful and wanton misconduct and strict liability in tort must be dismissed because the amended complaint fails to plead "any actual malice or intentional act or omissions by Middlesex" and "fail[s] to identify any alleged violation of a statute that would impose strict liability upon Middlesex" (*id.* at 11–12).

Franklin opposed Middlesex Water's motion to dismiss, arguing that Middlesex Water customers, including Plaintiffs, who received "all or some of their drinking water from Middlesex Water's Park Avenue Treatment Plant" were harmed by Middlesex Water's failure to "timely notify Plaintiffs of the contamination in their drinking water." ECF No. 61 at 1, 7–8. To that end, Franklin alleges that "it was not until November 9, 2021, over two months after [Middlesex Water] first received notice of the contamination issue, that the company commenced the interim shutdown of its Park Avenue facility." *Id.* at 6. Franklin also contends that Plaintiffs were harmed by Middlesex Water's failure to "promptly remediate the contamination" and "promptly provide Plaintiffs with safe and clean water to drink," and that this conduct, along with the failure to notify, was "negligent, willful and wanton." *Id.* at 8.

### III.     LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief" against the

defendants "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A court need not "accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (internal quotation marks and citation omitted). In other words, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotations, citation, and brackets omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.*

*Pro se* pleadings must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can be dismissed for failure to state a claim only if it appears beyond a doubt that the plaintiff can prove no set of facts to support his claim that would entitle him to relief. *See id.* at 520–21. *Pro se* litigants, however, must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). In a § 1983 action, the court must "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affs.*, 165 F.3d 244, 247–48 (3d Cir. 1999)); *see also Nami*

8

*v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [*pro se*] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.").

## IV. CONSTITUTIONAL CLAIMS

### A. Section 1983

Construing the amended complaint liberally, Plaintiffs appear to assert § 1983 claims against the Moving Defendants for unconstitutional conditions of confinement arising from their exposure to contaminated drinking water at EJSP.

Section 1983 is the vehicle by which private citizens may seek redress for state officials' violations of federal constitutional rights. *See* 42 U.S.C. § 1983; *see also Graham v. Connor*, 490 U.S. 386, 393–94 (1989) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred."). Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S 42, 48 (1988).

"[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *See Hafer v. Melo*, 502 U.S. 21, 31 (1991). Plaintiffs have alleged that, as prison administrators, the Individual Defendants are "persons" under § 1983. *See Fox v. Bayside State*

*Prison*, 726 F. App'x 865, 868–69 (3d Cir. 2018) ("In their individual capacities, [prison administrators] are unprotected by sovereign immunity and subject to suit under 42 U.S.C. § 1983.").

Whether an entity is acting under color of state law, *i.e.*, whether the defendant is a state actor, depends on whether "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks and citation omitted); *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). "To answer that question, [the Third Circuit has] outlined three broad tests":

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotation marks and citation omitted). Thus, an alleged wrongdoer must "have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). However, "purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994).

Plaintiffs' § 1983 claim must be dismissed as against Middlesex Water because they have not plausibly alleged that Middlesex Water is a state actor. In the amended complaint, Plaintiffs allege only that Middlesex Water is "a corporation organized and existing under the laws of New Jersey" (ECF No. 49 ¶ 5), and a supplier of water to EJSP (*id.* ¶ 13). But a "private firm does not become a state actor by selling its products to the government." *Steading v. Thompson*,

10

941 F.2d 498, 499 (7th Cir. 1991) (citing *Rendell-Baker v. Kohn*, 457 U.S. 830, 840–41 (1982)). Rather, Plaintiffs must plausibly allege one of the three conditions described above to establish that Middlesex Water acted under color of state law. The amended complaint does not contain facts supporting any of the three conditions—that Middlesex Water exercised powers traditionally the exclusive prerogative of the State, acted in concert with state officials, or were a joint participant with the state in the alleged wrongdoing—nor do Plaintiffs' opposition papers respond to Middlesex Water's argument that it is not a state actor. ECF No. 61. Thus, even accepting Plaintiffs' allegations as true and construing them in the light most favorable to Plaintiffs, the Court cannot reasonably draw an inference that Middlesex Water was acting under color of state law during the relevant time. This conclusion is consistent with numerous decisions finding that private utility companies, though heavily regulated, are not generally state actors for purposes of § 1983. *See Pettis v. Middlesex Cnty.*, No. 22-5121, 2022 WL 17751500, at *3 (D.N.J. Dec. 19, 2022) ("Defendant Middlesex Water Company's supplying [EJSP] with water does not make it a state actor, nor does Plaintiff allege that Middlesex Water Company is a state actor. As such, Plaintiff has failed to state a claim for relief against Middlesex Water Company. . . ."); *Vito v. Bray*, No. 89-8722, 1991 WL 197291, at *10 (E.D. Pa. Sept. 27, 1991), *aff'd*, 961 F.2d 1569 (3d Cir. 1992) ("The complaint is simply void of any allegations sufficient to find a non-government entity like the Water Company defendants liable for a civil rights violation.").[8] Accordingly, Plaintiffs cannot maintain a claim against Middlesex Water under § 1983. *See*

---

[8] *See also, e.g.*, *Moongate Water Co., Inc. v. Butterfield Park Mut. Domestic Water Ass'n*, 291 F.3d 1262 (10th Cir. 2002) (affirming district court's decision that private water company acting as a public utility was not a state actor, notwithstanding that its power derived from state law and it was heavily regulated by the state); *Medina v. Barnes & Noble, Inc.*, No. 22-525, 2022 WL 1555439, at *2 (M.D. Fla. May 17, 2022) (dismissing § 1983 claims where "all named Defendants are either private entities or publicly traded companies and Plaintiff does not allege any of the three causal connections establishing Defendants acted under color of state law").

11

*Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) ("The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law."). Thus, insofar as the amended complaint contained a § 1983 claim against Middlesex Water, the claim will be dismissed.

### B. Conditions of Confinement

The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A successful conditions-of-confinement claim must satisfy a two-pronged test: (1) the plaintiff experienced an objectively "serious" deprivation of life's basic needs or was exposed to a "substantial risk of serious harm" to his or her health; and (2) the defendants knew of and were deliberately indifferent to that deprivation or risk. *See Farmer*, 511 U.S. at 834; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226–28 (3d Cir. 2015).

To the extent the Court assumes that contaminated water satisfies the first prong, *see*, *e.g.*, *Helling v. McKinney*, 509 U.S. 25, 35–37 (1993) (using "demonstrably unsafe drinking water" as a hypothetical example of a potential conditions-of-confinement claim), Plaintiffs fail to satisfy the second prong. Plaintiffs have not plausibly alleged that the Individual Defendants were deliberately indifferent to the alleged risk of harm. First, the Court cannot credit Plaintiffs' conclusory allegation that the Individual Defendants "have long known that the water supply provided to the plaintiffs was toxic and unsafe to drink." ECF No. 49 ¶ 30; *see also Richardson v. N.J. Dep't of Corr.*, No. CV20679, 2023 WL 1368015, at *3 (D.N.J. Jan. 31, 2023) ("[C]onclusory allegations are insufficient to state a plausible claim for relief. . . ."). Plaintiffs offer no factual support for such an allegation.

12

Second, it appears that one day after Middlesex Water issued the November Notice and more than one month before the Individual Defendants responded to Plaintiffs' grievances in December 2021 (ECF No. 49 ¶¶ 27–29), the source of the contaminated water—Middlesex Water's Park Avenue Treatment Plant—had been shut down and was no longer servicing EJSP. *See* ECF No. 61 at 6 ("[I]t was not until November 9, 2021 . . . that the company commenced the interim shut down of its Park Avenue facility.").[9]  Given these facts, the Court cannot reasonably infer that Russo knew the water was unsafe to drink in December 2021, yet deliberately advised Franklin to the contrary.  Thus, Russo's December 2021 response to Franklin's grievance—"[t]he water has not been deemed unsafe to drink" (ECF No. 49 at 29)—cannot support a claim of deliberate indifference.

Third, Plaintiffs' allegation that the Individual Defendants "have never notified plaintiffs of the water test results or the related health threat" (*id.* ¶ 30) does not support a plausible inference that the Individual Defendants acted with a culpable state of mind.  As Plaintiffs concede, the November Notice from Middlesex Water, which contained the water test results and related health threats, was posted in the EJSP law library.  *Id.* ¶ 14, at 29 (Franklin writing, in response to Mr. Russo's comment on his grievance form: "According to the notice posted in the Law Library . . . .").  Insofar as Plaintiffs seek to hold the Individual Defendants liable on the basis that they should have disseminated the November Notice more widely (and also assuming that the Individual Defendants were responsible for disseminating this notice), that conduct does not rise

---

[9] Franklin does not cite a source for his allegation that Middlesex Water "commenced the interim shutdown of its Park Avenue facility" on November 9, 2021, but it appears he may have obtained the information from a subsequent public notice issued by Middlesex Water on January 22, 2022.  In that notice, Middlesex Water stated: "Middlesex Water shut down the wellfield that was testing above state limits for the new PFOA standard, effective November 9, 2021.  We are obtaining water from alternate sources that comply with all state and federal drinking water standards."  *See* https://www.middlesexwater.com/wp-content/uploads/2023/01/Past-PFOA-Public-Notices-Combo.pdf at 10 (last visited Mar. 1, 2024).

to the level of deliberate indifference.  This is particularly so in view of Franklin's concession that one day after the November Notice was received and posted, EJSP was no longer receiving the contaminated water.  *See* ECF No. 61 at 6.

Fourth, to the extent Plaintiffs argue that the Individual Defendants are subject to liability based upon their status as supervisors, they fail to state a claim.  Chetirkin and Russo can be liable only for their own actions or omissions, and only upon a showing of their own subjective deliberate indifference.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677; emphasis in *Jutrowski*)).

Personal involvement on the part of a supervisor includes directing others to violate a plaintiff's rights, or actually knowing of and acquiescing in the alleged violations.  *See Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)).  "A mere hypothesis about a defendant's knowledge will not suffice."  *Payne v. Butts*, No. 21-2210, 2022 WL 16916347, at *1 (3d Cir. Nov. 14, 2022) (per curiam).  Supervisors can also be held liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (alteration in original) (quoting *A.M.*, 372 F.3d at 586).

14

Here, Plaintiffs do not plausibly allege or provide a factual basis for inferring that the Individual Defendants directed others to violate Plaintiffs' rights or knowingly acquiesced in such misconduct. Plaintiffs also fail to identify a policy, practice, or custom causing the alleged constitutional harm that either Chetirkin or Russo established and maintained. Accordingly, to the extent Plaintiffs intended to premise their deliberate indifference claim on supervisory liability, they fail to state a claim.

For these reasons, Plaintiffs cannot maintain a claim against the Individual Defendants under § 1983. Accordingly, the § 1983 claim against Chetirkin and Russo will be dismissed.

As to the non-moving defendants, Sweeney (the EJSP associate administrator) and John and Jane Does 1–10, the Court will exercise its screening authority under 28 U.S.C. § 1915(e)(2)(B) to dismiss the claims against them. Plaintiffs provide no factual basis for their allegation that Sweeney had "long known that the water supply provided to the plaintiffs was toxic and unsafe to drink," ECF No. 49 ¶ 30, nor have they provided a factual basis for an inference that Sweeney acted with a culpable state of mind in responding to Plaintiffs' grievances in December 2021 or failing to disseminate the November Notice more widely within EJSP. Moreover, Plaintiffs have failed to plausibly allege that Sweeney directed others to violate Plaintiffs' rights, that she knowingly acquiesced in misconduct, or that she established and maintained a policy, practice, or custom that caused the alleged constitutional harm. Accordingly, the § 1983 claim against Sweeney will be dismissed. Likewise, the claims against the John and Jane Does will be dismissed. Plaintiffs do not assert claims against these individuals in the amended complaint.

Finally, because the Court will dismiss Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(c)(3) (a

district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction").

## V. CONCLUSION

For the reasons above, the Moving Defendants' motions to dismiss the § 1983 claims against them (ECF Nos. 48, 51) will be granted and those claims will be dismissed without prejudice. The Court will also dismiss the § 1983 claims without prejudice as against Sweeney and the John and Jane Does; and the Court will decline to exercise supplemental jurisdiction over the state law claims. Accordingly, Plaintiffs' amended complaint is dismissed without prejudice. Plaintiffs will be given thirty (30) days to file a second amended complaint if they believe they can cure the deficiencies noted herein. An appropriate order will be entered.

DATED: March 26, 2024

*/s/ Claire C. Cecchi*
HON. CLAIRE C. CECCHI
United States District Judge